IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOSELITO VELASCO
and ASHMIRA VELASCO,

        Plaintiffs,
vs.                                                                                     CIVIL NO.   99-1369 JP/LFG

DAIMLERCHRYSLER CORPORATION et al.,

        Defendants.

## **FINDINGS AND RECOMMENDATIONS**[1]

THIS MATTER is before the Court on the Plaintiffs' response [Doc. 52] to the Court's Order to Show Cause [Doc. 48]. In accord with the Court's directive, Plaintiffs filed their response, supporting affidavits and various exhibits. The Court was also advised by Plaintiffs that Defendants expressed no opinion on the matter and would not file a response. (Response, p. 11). Based on the Court's review of these documents, it determines as follows:

    1. Plaintiff, Ashmira Velasco, was rendered quadriplegic as a result of the automobile accident which formed the basis of the present lawsuit.

    2. Ashmira Velasco did not suffer any cognitive loss or incompetency, and she is fully capable of making any and all decisions concerning her welfare and future. (Response, p. 5, n. 2).

    3. Ashmira Velasco does not qualify for the appointment of a guardian or conservator, and there exists no need to seek such an appointment. (Response, p. 5, n. 2).

---

[1]Within ten (10) days after a party is served with a copy of these Findings and Recommendations, that party may file written objections pursuant to 28 U.S.C. § 636(b)(1).  A party must file any objections within the ten-day period allowed if that party wants to have appellate review of the Findings and Recommendations. If no objections are filed, no appellate review will be allowed.

4. So as to settle claims of disputed liability and damages, the parties settled their personal injury lawsuit in October 2000. The settlement was independent of any Court participation. (Response, p. 2). As part of the settlement, the parties agreed to establish the Velasco Qualified Settlement Fund. (Response, p. 5).

5. A qualified settlement fund ("QSF") is a "fund, account or trust" authorized by Section 468(B) of the Internal Revenue Code of 1986 and by Treasury Regulation 1.468(B)-1, intended to provide significant benefits and advantages to an injured plaintiff. (Responses, p. 2, Cresswell and Whitmore affidavits; Treasury Regulations).

6. A QSF must be established pursuant to a court's order or by approval of the United States or any state, territory, possession or political subdivision, and the QSF is subject to the continuing jurisdiction of the governmental authority authorizing the QSF. Treasury Regulation 1.468(B)-1(c)(1).

7. A QSF affords favorable tax treatment for a plaintiff in that settlement funds can be paid to the QSF without the funds being reduced to the plaintiff's possession or without them being considered constructively received by the plaintiff, both of which are taxable events. Treasury Regulation 1.451-2(a). Moreover, because a QSF can be used to establish a special needs trust, a settling plaintiff may receive the benefits of the settlement without being disqualified from eligibility for Medicaid and other governmental assistance programs. (Response, p.7). A QSF may be utilized to purchase tax-free annuities and other structured settlements and gain favorable tax treatment thereby. Internal Revenue Code § 104 (a)(2). These annuities and other settlement structures are intended to provide income to cover Ashmira Velasco's lifetime medical needs. (Id. Cresswell and Whitmore affidavits).

8. While Plaintiffs and Defendants have resolved their differences, there remain unsatisfied claims for medical liens incurred by the United States Air Force insurance carrier for expenditures made on behalf of Ashmira Velasco during the course of her treatment. Additionally, there are unresolved claims concerning the allocation of settlement funds between the Plaintiffs, and unresolved issues concerning whether a special needs trust is or is not in the best interests of Ashmira Velasco. Those unresolved issues give weight to the parties' decision to establish a QSF and bring an end to the litigation; and allow settlement funds to immediately earn interest while those issues are resolved without subjecting the plaintiffs to unfavorable tax consequences. In the absence of a QSF, settlement funds paid may be deemed "economic performance" under IRC § 461(h) and Treasury Regulation 468(b)-4, and thus, the Plaintiffs could suffer economic loss if the QSF were set aside. (Response, Cresswell and Whitmore affidavits).

9. A QSF may deduct expenses for claims administration, attorney fees, accounting, trustee services, and other allowable deductions can be used to offset income earned on settlement proceeds held by the fund. (Response, Whitmore affidavit and Higgins letter).

10. The interest earned on settlement monies on deposit in the QSF serve to increase the size of the settlement fund and help to defray, in part, the costs, fees and expenses of the litigation, as well as increase the settlement fund so as to satisfy other claims of medical and healthcare providers.

11. The Court's December 22, 2000 order establishing the QSF was and remains in the plaintiffs' best interests. The Court will not set aside its prior order. Setting aside the QSF could, potentially, cause Ashmira Velasco to lose her eligibility for programs and benefits for which she might otherwise be qualified. (Response, Cresswell and Whitmore affidavits).

12. Plaintiffs anticipate that the life of the QSF "[i]s expected to be relatively short lived, and

the business and existence of the Velasco QSF will probably be wrapped up and completed within a matter of a month or two." (Response, p. 4).  Thus, it is not anticipated that the Court will have oversight responsibilities on this matter for an extensive period of time, and, therefore, the goals of the Civil Justice Reform Act, 28 U.S.C. § 471 *et seq.*, will not be thwarted by the Court's "continuing jurisdiction."

       13.  Based on the response to the Court's Order to Show Cause, the Court reaffirms the QSF, but modifies its terms consistent with the Court's oversight responsibility.

       14.  To ensure continuing and appropriate supervision over the QSF, within thirty days, the fund administrator shall file, under seal, a report with the Court summarizing the fund administrator's ongoing activities, including a review of funds or property received, disbursements made, investment and reinvestment of principal and income, investments made, accounts opened, expenses incurred and/or paid, together with a statement of income earned and any profits or losses made during the reporting period.  Similar reports shall be filed with the Court, under seal, every sixty days thereafter until further order of the Court, or until the termination of the QSF.  On termination of the QSF, a final accounting shall be filed with the Court.

       15.  Consistent with the Court's oversight responsibilities, and because the Court may not authorize a person to act in a manner inconsistent with state law or court order, certain language in paragraph 5.2 of the Velasco QSF is stricken.  The stricken language is as follows:  "notwithstanding that the same may not be authorized by the laws of any state or rules of any court for the investment of funds."[2]

---

[2] The striking of this language does not limit the fund administrator's authority to retain or hold all or part of the QSF in the form it was received, nor does it limit the fund administrator's ability to manage, invest and reinvest assets of the QSF.  <u>See</u> 5.3.  However, the Court may simply not authorize a party to act

16. In response to the Court's concern that the administrator's fees and expenses are paid with Court approval, Plaintiffs respond that the administrator's fees are paid based on a set amount contained in a written agreement. The administrator's fees are "a flat amount, not incurred as an hourly rate." (Response, p. 15). Plaintiffs further state, "The administrator's expenses, however, do get submitted to the Court for approval. See Velasco QSF, ¶ 7." (Response, p. 15). However, the QSF is unclear on this point. Paragraph 7 states that the fund administrator shall receive payment for her service in accordance with the schedule of rates in effect at the time such compensation becomes payable and that compensation may be paid without Court approval. The next sentence provides that the fund administrator may be reimbursed for expenses, including travel, reasonably required and incurred by such fund administrator. There is no separate provision indicating that the fund administrator's reimbursement is subject to Court approval. To eliminate the ambiguity, paragraph 7 of the QSF is therefore amended to include a sentence, "The administrator's expenses are to be submitted to the Court for approval."

17. Due to the Court's concerns that its approval or disapproval of proposed litigation may be taken as an inappropriate comment on the merits of the proposed litigation, 5.6 is amended to read, "The fund administrator may institute and defend litigation in the name of the QSF."

18. The foregoing changes are intended to ensure that during the period of Court supervision, the Court's oversight responsibility can be effectively carried out without imposing limitations on the fund administrator's ability to commit funds to any investment term or position in an attempt to diversify risk and/or obtain varying levels of return as she deems appropriate. Nothing in the revisions

---

inconsistent with laws of any state or rules of any court. Accordingly, that portion of the language in paragraph 5.2 must be removed.

is intended to restrict the fund administrator's ability to allow funds to be maintained on an immediately available, cash basis or to earn "savings return" rather than an "investment return." These modifications do not interfere with the fund administrator's ability to utilize her best judgment to establish short-lived "interim" accounts, to commit the funds to any investment term or position, to diversify risk and/or obtain varying levels of return as she deems appropriate or advisable. In the discharge of her duties, the fund administrator shall pursue the purposes and objectives of the QSF as provided for in paragraph 4.2 and 5.3.

19. These changes are intended to provide the Court with periodic reports so as to allow some basis for ongoing Court review.

With the foregoing modifications and alterations to the QSF, the Court will reaffirm its December 20, 2000 order and enter orders approving the two motions for partial distribution of funds.[3]

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge

---

[3] The Magistrate Judge recommends approval of the Plaintiffs' motion for partial distribution of funds [Doc. 50], save for that portion requesting that $20,000.00 be held in escrow for costs not yet known or to be incurred. No good cause has been shown for this request, and the QSF has funds sufficient to pay for costs incurred. Allowing this portion of the request will deplete the QSF and reduce interest that would otherwise be earned.